1  James C. Pistorino (SBN 226496)
   James F. Valentine (SBN 149269)
2  HOWREY SIMON ARNOLD & WHITE, LLP
   301 Ravenswood Avenue
3  Menlo Park, CA  94025-3434
   Telephone:  (650) 463-8100
4  Facsimile:   (650) 463-8400

5  Attorneys for Non-Party
   PHILIPS ELECTRONICS NORTH AMERICA
6  CORPORATION

7

8                  UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                      OAKLAND DIVISION

11 INTERTRUST TECHNOLOGIES              ) Case No. C01-1640 SBA (MEJ)
   CORPORATION, a Delaware corporation, )
12                                       )
                                         )
13              Plaintiff,               ) **NON-PARTY PHILIPS ELECTRONICS**
                                         ) **NORTH AMERICA CORPORATION'S**
14         vs.                           ) **NOTICE OF MOTION AND MOTION FOR**
                                         ) **SANCTIONS FOR VIOLATION OF FED. R.**
15 MICROSOFT CORPORATION, a Washington   ) **CIV. P. 45(c)(1)**
   corporation,                          )
16                                       ) Judge:   Hon. Maria-Elena James
              Defendant.                 )
17 ─────────────────────────────────     ) Date:    May 6, 2004
                                           Time:    10:00 A.M.
18                                         Crtm:    B, 15th Floor

19

20

21

22

23

24

25

26

27

28

**HOWREY SIMON ARNOLD & WHITE**

NON-PARTY PHILIPS ELECTRONICS NORTH AMERICA
CORPORATION'S NOTICE OF MOTION AND MOTION
FOR SANCTIONS FOR VIOLATION OF FED. R. CIV. P. 45(c)(1)
C01-1640 SBA (MEJ)

# TABLE OF CONTENTS

Page(s)

NOTICE OF MOTION AND MOTION ............................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................... 1

I.    INTRODUCTION ........................................................................................................ 1

II.   BACKGROUND ......................................................................................................... 2

III.  ARGUMENT ............................................................................................................... 4

    A.   Microsoft Imposed Undue Burden By Serving A Facially
        Overbroad Subpoena On PENAC ................................................................... 4

        1.    The Subpoena Seeks Documents Relating To Irrelevant
            Patents/Patent Applications ............................................................. 4

        2.    The Subpoena Is Unlimited As To Time ......................................... 5

        3.    The Subpoena Contains Exceedingly Overbroad
            Definitions ...................................................................................... 6

        4.    The Subpoena Is Not Limited To Topics Relevant To
            Underlying Litigation ...................................................................... 7

    B.   Microsoft Imposed Undue Burdens By Refusing To  Provide
        Sufficient Time For Production ..................................................................... 8

    C.   Microsoft Imposed Undue Burdens By Refusing To Move
        PENAC's Deadline For Moving To Quash ................................................... 9

    D.   Microsoft Imposed Undue Burden By Forcing PENAC To Litigate
        In The Southern District Of New York For No Articulable Reason ............ 10

    E.   Microsoft's Woeful Efforts To Defend The Subpoena ................................. 10

    F.   Non-Party PENAC'S Requested Relief ....................................................... 11

IV.   CONCLUSION ......................................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Concord Boat Corp. v. Brunswick Corp.*,
169 F.R.D. 44 (S.D.N.Y. 1996)........................................................................4

*Laker Airways Ltd v. Pan American World Airways*,
607 F. Supp. 324 (S.D.N.Y. 1985).................................................................5

*Semtek Int'l, Inc. v. Merkuriy Ltd.*,
WL 238538 (N.D.N.Y. May 1, 1996)..............................................................4

## RULES

Federal Rule of Civil Procedure 45(c)(1) ...................................................... 1, 4

Federal Rule of Civil Procedure 45(c)(2)(B) .................................................... 2

Federal Rule of Civil Procedure 45(c)(3)(a) .................................................... 9

## OTHER

*9 Moore's Federal Practice* § 45.04[3][a] (Supp.
2003)...................................................................................................................9

HOWREY
SIMON
ARNOLD &
WHITE

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on May 6, 2004, at 10:00 a.m., or as soon thereafter as the matter may be herd, in the courtroom of the Honorable Maria-Elena James of the above-mentioned Court, located at 450 Golden Gate Avenue, San Francisco, California, Non-Party Philips Electronics North America Corporation ("PENAC") will and hereby does move this Court for an Order that the subpoena issued to non-party PENAC by Defendant Microsoft Corporation be quashed in its entirety and that non-party PENAC be awarded its reasonable attorney's fees incurred in responding to the subpoena.

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.     **INTRODUCTION**

Non-party PENAC files this Motion for Sanctions pursuant to FED. R. CIV. P. 45(c)(1) for Microsoft Corporation's failure to take reasonable steps to avoid placing an undue burden on a non-party, and respectfully requests that the Court both quash the subpoena in its entirety and award non-party PENAC its reasonable attorney's fees incurred in responding to the 20-page, 47-request subpoena.

As explained further below, this motion was originally filed before Judge Cedarbaum in the Southern District of New York because Microsoft refused to consent to having the dispute heard before this Court. When Microsoft was unable to articulate any reason why the dispute should not be resolved by this Court, Judge Cedarbaum ordered the parties to have the issue resolved by this Court, which has greater familiarity with the underlying issues.

Pursuant to Magistrate Judge Maria-Elena James' Standing Order Re: Discovery ¶ 4, PENAC and Microsoft have submitted a joint letter to Judge James, to whom all discovery matters have been assigned. That letter raises PENAC's motion to quash. Out of an abundance of caution, this companion motion for sanctions is being filed separately pursuant to Judge James' Standing Order Re: Discovery ¶ 13.



II.   **BACKGROUND**

The facts of this matter are further detailed in the affidavits of Messrs. Valentine and Pistorino and Ms. Madriaga.[1]  A summary of the pertinent facts is provided below.

On January 26, 2004, Microsoft served a wide-ranging subpoena on non-party PENAC in the Southern District of New York demanding a raft of documents located throughout the world and demanding production by February 20, 2004 (*i.e.*, 25 days later).  (Pistorino Decl., Ex. 4.)  This subpoena was received by outside counsel representing PENAC (Mr. James Valentine) at Howrey Simon Arnold & White's Menlo Park office on February 2, 2004.  (*Id*. at ¶ 4.)  In accordance with Rule 45(c)(2)(B) of the Federal Rules of Civil Procedure, Philips' objections to the Microsoft subpoena were due on February 9, 2004 (*i.e.*, 14 days after the January 26 service date).

Simultaneously, however, Mr. Valentine was informed that his mother suddenly had become critically ill.   (*Id*. at ¶ 3.)  During the period of February 2-8, Mr. Valentine's mother was in and out of the intensive care unit, and Mr. Valentine was diligently trying to wrap up a series of pressing matters so that he could return home to Ohio to be at his mother's bedside.  (*Id*. at ¶¶ 5-8.)  Finally, by the morning of February 9, Mrs. Valentine's condition had worsened dramatically, and Mr. Valentine was informed that he needed to return to Ohio immediately to make "tough decisions" regarding his mother's care.  (*Id*. at ¶ 7.)  Mr. Valentine immediately left to be at her side and to handle attendant family matters.  (*Id*. at ¶¶ 5-8.)  Unfortunately, in the crush of trying to deal with this emergency and wrap up numerous work related matters, Mr. Valentine overlooked the subpoena by Microsoft.   (*Id*. at ¶¶ 9-11.)

On February 9, the date for filing objections to the subpoena passed while Mr. Valentine was traveling to be at his mother's bedside in the ICU.  (*Id*. at ¶ 8.)  Mrs. Valentine was subsequently

---

[1]  Non-Party PENAC's Motion to Quash, for Sanctions, for Leave to File Objections, and/or for Leave to Transfer Discovery Dispute filed in the Southern District of New York ("PENAC's Motion to Quash") is attached in its entirety as Exhibit 1 to the Declaration of James C. Pistorino in support of Non-Party PENAC's Motion for Sanctions ("Pistorino Decl.").  PENAC's Reply Memorandum and Declarations of Messrs. Valentine and Pistorino and Ms. Madriaga in support of the Reply Memorandum to PENAC's Motion to Quash are attached in their entirety as Exhibit 3 to Pistorino Decl.

1    diagnosed with multiple myeloma, an incurable form of cancer of the blood that had spread throughout

2    her body.  (*Id.* at ¶ 9.)  Fortunately, however, Mrs. Valentine's condition improved enough that

3    aggressive chemotherapy efforts to treat the cancer (with an eye toward preventing its further spread)

4    could be undertaken.  (*Id.*)  Again, Mr. Valentine was by his mother's side during this difficult period,

5    and her condition stabilized over the course of the next few days.  (*Id.* at ¶¶ 9-10, 12.)

6         On Sunday, February 15, 2004, Mr. Valentine recalled the Microsoft subpoena and left a

7    message for counsel for Microsoft (Mr. Mark Lambert) explaining the circumstances and seeking an

8    extension to file objections.  (*Id.* at ¶ 10.)  On February 17, 2004, Mr. Valentine returned from Ohio to

9    his office and was greeted with a message from Mr. Lambert.  During the next two days, Mr. Valentine

10   had several conversations with Mr. Lambert and exchanged voicemail messages with Mr. Wesenberg

11   in an effort to resolve the parties' disputes informally.  (*Id.* at ¶¶ 13-17.)  Ultimately, the efforts proved

12   unsuccessful, and Mr. Valentine asked Mr. Lambert to consent to having the discovery dispute

13   resolved in the Northern District of California where the underlying action was pending and both

14   Messrs. Valentine and Lambert were located.  Mr. Lambert refused.  (*Id.* at ¶ 11.)  Mr. Valentine then

15   asked if Mr. Lambert would agree to extend the time for PENAC to file a motion to quash, and again

16   Mr. Lambert refused.  (*Id.*)  Consequently, PENAC was forced to retain counsel in New York and

17   prepare the instant motion throughout the night of February 18th so that it could be filed timely in the

18   Southern District of New York the next day.  (*Id.* at ¶ 19.)  A copy of this entire briefing is attached as

19   Exhibit 1 to the accompanying Declaration of James C. Pistorino.   Philips served its objections on

20   February 18, 2004 (nine days late).  (*See* Pistorino Decl., Ex. 8 at Tab E).

21        On March 9, Judge Cedarbaum of the Southern District of New York agreed with PENAC

22   (over Microsoft's objections) and ordered Microsoft and PENAC to raise these matters with this Court.

23   A transcript of the March 9 hearing is attached as Pistorino Decl., Ex. 5.  On March 15, Mr. Pistorino

24   (on behalf of PENAC) and Mr. Lambert (on behalf of Microsoft) met and conferred.  Mr. Lambert

25   again attempted to capitalize on the tragedy facing the Valentine family, refused to treat PENAC's

26   objections as timely, and refused to compensate PENAC for the fees it has incurred in resisting the

27   subpoena.  A transcript of the March 15 meet and confer is attached as Pistorino Decl., Ex. 6.

28

NON-PARTY PHILIPS ELECTRONICS NORTH AMERICA
CORPORATION'S NOTICE OF MOTION AND MOTION
FOR SANCTIONS FOR VIOLATION OF FED. R. CIV. P. 45(c)(1)
C01-1640 SBA (MEJ)

III.   **ARGUMENT**

Federal Rule of Civil Procedure 45(c)(1) specifically requires that:

> A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena.  The court on behalf of which the subpoena was issued ***shall*** enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanctions, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(Emphasis added.)  In the present case, Microsoft's attorneys Lambert and Wesenberg violated Rule 45(c)(1) by serving the subpoena on non-party PENAC and failing to take reasonable steps to avoid imposing an undue burden by:  1) serving a facially overbroad subpoena; 2) refusing to move the date of production; 3) refusing to move the date to file a motion to quash; and 4) forcing non-party PENAC to litigate this issue in the Southern District of New York.

   A.   **Microsoft Imposed Undue Burden By Serving A Facially Overbroad Subpoena On PENAC**

It is well settled that serving a facially overbroad subpoena, in and of itself, constitutes an undue burden for which sanctions may issue.  *See, e.g., Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 48 (S.D.N.Y. 1996); *Semtek Int'l, Inc. v. Merkuriy Ltd.*, 1996 WL 238538, at *1-2 (N.D.N.Y. May 1, 1996).  In the present case, there is little doubt that Microsoft's subpoena is facially overbroad.  Broken down into categories of overbreadth:

      1.   **The Subpoena Seeks Documents Relating To Irrelevant Patents/Patent Applications**

Though only 11 patents are at issue in this litigation and "InterTrust Asserted Patents" was separately defined, Request Nos. 1, 2, 25-28, 32, and 37 all demand documents concerning "InterTrust Patents" which is defined as "*any and all patent and patent applications through out the world* which InterTrust owns or possesses the right to grant a license."   Based on a search of the United States Patent and Trademark Office records, InterTrust is the assignee of at least 25 issued United States patents.  (*See* Pistorino Decl., Ex. 10 at Tab F.)  Thus, on their face, these Requests demand information concerning at least 14 irrelevant patents and this fact is not disputed by Microsoft.  Accordingly, Requests relying on this definition are facially overbroad and constitute an undue burden.

4



2.     **The Subpoena Is Unlimited As To Time**

Virtually none of the Requests contain any limit as to time and those that do are subsumed within other Requests that are not so limited.  For example, Request No. 47 demands:

> All documents that refer or relate to any co-operation between Sony and Philips[2] to explore, research, develop, or invent DRM technology or computer security technology.

Because this Request is not limited in time, it literally demands that non-party Royal Philips (not PENAC) review all communications with Sony (two of the world's largest electronics companies) for the past 58 years[3] to determine whether they relate to "computer security."  Even limited to non-party PENAC (which the Request is not), the Request demands the review of materials covering the last 45 years.  Similarly, Request No. 27 demands:  "All documents that refer or relate to any communication with any person regarding … DRM[.]"  Because it is unlimited as to time and utilizes an overbroad definition of "DRM," the Request demands the review (and copies) of, *inter alia*, all documents that "refer or relate" to "audio, video, video games, books, periodicals, and other textual publications" since the founding of Royal Philips in 1891, *i.e.*, 113 years.

The few Requests that contain any mention of dates do so only as a means for demanding everything prior to that date and are essentially unlimited as to time.  For example, again applying the overbroad definition of "DRM", Request No. 30 demands the identification of all publications that "refer or relate" to "audio, video, video games, books, periodicals, and other textual publications" prior

---

2    By way of background, PENAC is a U.S.-based company with more than 18,000 employees and is the successor to a company founded in 1959.  PENAC is now owned by Philips Holding USA, Inc. which, in turn, is owned by Royal Philips Electronics (one of the world's largest electronics companies with over 160,000 employees in 65 countries worldwide).  Royal Philips, in turn, is an investor in Fidelio Acquisition Co., LLC which purchased plaintiff InterTrust in November 2002 (*i.e.*, more than a year and a half after this suit was filed).  (*See* Pistorino Decl., Ex. 8 at Tabs B and C.)  Apparently, unable to serve Royal Philips and unwilling to proceed through the Hague Convention, Microsoft has decided that it will simply serve PENAC and define "Philips" to include PENAC as well as Royal Philips and all Philips entities worldwide.  *See Laker Airways Ltd. v. Pan Am. World Airways*, 607 F. Supp. 324, 326-27 (S.D.N.Y. 1985) (quashing non-party subpoenas as "transparent attempt to circumvent the Hague Convention.").

3 Given that the company that eventually became Sony Corporation was founded in 1946 (in the wake of World War II), presumably, this particular Request only demands a review of materials since that time and production of responsive documents, if any, within 25 days of service of the subpoena.

HOWREY
SIMON
ARNOLD &
WHITE

NON-PARTY PHILIPS ELECTRONICS NORTH AMERICA
CORPORATION'S NOTICE OF MOTION AND MOTION
FOR SANCTIONS FOR VIOLATION OF FED. R. CIV. P. 45(c)(1)
C01-1640 SBA (MEJ)

1   to February 13, 1995, *i.e.*, in the case of non-party Royal Philips, for 104 years.[4]  In the case of non-

2   party PENAC the review is limited only by the date PENAC was formed as a corporation (1959), *i.e.*,

3   this Request alone demands a review of more than 35 years worth of material.  Again, none of this is

4   disputed by Microsoft.  Thus, on their face, Microsoft's Requests are overbroad because they are not

5   limited to anything that could have happened in either the current or previous centuries.

6                    3.    **The Subpoena Contains Exceedingly Overbroad Definitions**

7        As defined in the subpoena, "digital rights management" (DRM) includes, but is not limited to

8   "(i) regulating access to electronic content and information, or (ii) providing access to electronic

9   content and information contingent upon proof of payment, membership status, and other specified

10  conditions."  As defined, DRM specifically includes anything related to "audio, video, video games,

11  books, periodicals, and other textual publications."  Thus, on their face, Requests utilizing such an

12  overbroad definition demand documents concerning *entire industries* since before the dawn of modern

13  electronics in the 1920's.  Because Request Nos. 25-30 rely on such a definition, in whole or in part,

14  they are overbroad on their face.

15       Likewise, though served on non-party PENAC, the subpoena specifically defines "Philips" to

16  include Royal Philips and all Philips entities worldwide.  The effect of such an overbroad definition on

17  Requests utilizing the term "Philips" is identified above.  Moreover, the overbroad definition of

18  "Philips" was apparently a deliberate attempt by Messrs. Lambert and Wesenberg to avoid the

19  requirements of the Hague Convention.  That is, unable or unwilling to serve Royal Philips with a

20  subpoena, Messrs. Lambert and Wesenberg simply served PENAC with an intentionally overbroad

21  subpoena for the purpose of imposing on PENAC the burden of litigating this issue.

22

23

24

---

25  [4] The only Request that appears to contain any meaningful limit as to time is Request No. 40, which
    demands the identification of all of Royal Philips personnel worldwide that have knowledge of
26  communications with InterTrust on any topic since January 1, 2002.  Though the Request does contain
    a time limit, it is obviously overbroad as it is not limited to any topic of relevance to the underlying
27  litigation.  For example, a suggestion of tuna fish for lunch falls within the demand.

28

HOWREY
SIMON
ARNOLD &
WHITE

NON-PARTY PHILIPS ELECTRONICS NORTH AMERICA
CORPORATION'S NOTICE OF MOTION AND MOTION
FOR SANCTIONS FOR VIOLATION OF FED. R. CIV. P. 45(c)(1)
C01-1640 SBA (MEJ)

4.     **The Subpoena Is Not Limited To Topics Relevant To Underlying Litigation**

In addition to all of the above, many of the Requests are not limited to any topic that ever could have any relevance to the underlying litigation.  Moreover, the Requests rely on defined terms in compound form so that defined terms of extreme breadth are used to define yet other terms that are themselves of extreme breadth.

For example, plugging in the overbroad definitions of "Standards Body," "InterTrust Patents," and "DRM," Request No. 28 demands:

> All documents that refer or relate to any [group of persons, formal or informal, that considers discusses, creates, adopts, or develops industry standards relating to electronic commerce or the claimed subject matter of [[any and all patents and patent applications throughout the world which InterTrust owns, or for which InterTrust possesses the right to grant a license]], including without limitation the Moving Picture Experts Group (MPEG); Secure Digital Music Initiative (SDMI); MPEG-4 Industry Forum (M4IF); Trusted Computing Platform Alliance (TCPA); Software & Information Industry Association (SIIA); the Institute of Electrical and Electronics Engineers, Inc. (IEEE); American National Standards Institute (ANSI); International Organization for Standardization (ISO); and the International Electrotechnical Commission (IEC)], or any member thereof, regarding InterTrust Products, [any and all patents and patent applications throughout the world which InterTrust owns, or for which InterTrust possesses the right to grant a license], [any services or other offering involving [[any technical means of implementing or enforcing any instructions or information (such as digital rules or policies) that enable describe, and/or provide contributory means for performing or not performing, any permitted and/or required operation relating to [[[electronic content and information primarily related or published for distribution to an consumption by end-user individual consumers in the consumer market, including audio, video, video games, books, periodicals and other textual publications, and includes associated consumer end-user data obtained in connection therewith]]].  This includes, for example, actions such as (i) regulating access to electronic content and information, or (ii) providing access to electronic content and information contingent upon proof of payment, membership status, and/or other specified conditions]] for a fee or other consideration or for no charge as a result of consideration derived from a proxy or subsidizing payer (such as advertisers)], Microsoft, or InterTrust's litigation with Microsoft.

As far as PENAC is able to follow the Request, it literally demands, ***in part***, all documents that "refer or relate" to Microsoft and:

HOWREY
SIMON
ARNOLD &
WHITE

1      1) the metric system (IEEE SI10);

2      2) nuclear power (ANSI 352);

3      3) passenger car rear window defrosters (ISO 5898);

4      4) gaskets in shipbuilding and marine structures (ISO 3902);

5      5) nails in pallets (ISO 12777);

6      6) RADAR (IEEE 521);

7      7) communication with trains (IEEE 1473);

8      8) contact lenses (ANSI Z80);

9      9) MPEG, IEEE, ANSI, ISO, SDMI, M4IF, TCPA, SIIA, IEC, or any member thereof; and

10      10) on and on and on …

11  In addition, the Request demands all documents that "refer or relate" to Microsoft and any of the more

12  than 10,000 standards published by ANSI.[5]  Again, because there is no time limit, this one aspect of

13  this one Request demands the review of documents since the founding of Microsoft by Bill Gates and

14  Paul Allen in 1975, *i.e.*, nearly 30 years ago. ***All of that is just one part of this particular Request.***

15  Likewise, again, simply as an example, Request No. 27 suffers from similar defects.  Obviously, none

16  of this material is even remotely relevant to the underlying litigation.  Accordingly, again, the Requests

17  are overbroad on their face and constitute an undue burden.

18      B.    **Microsoft Imposed Undue Burdens By Refusing To
Provide Sufficient Time For Production**

19

20      Even assuming that Microsoft's demands for production were reasonable (which they

21  emphatically are not), Microsoft had a duty to avoid placing an undue burden on non-party PENAC by

22  not setting (and then refusing to move) an unreasonable date for production.  As detailed above, the

23  subpoena served by Microsoft literally demands the review of more than a century's worth of

24  documents (in the case of non-party Royal Philips) and 45 years worth of documents (in the case of

25  non-party PENAC).  Microsoft's unwavering demand that these documents be produced within 25

26

27  [5] No information was available to quantify the large number of standards published by the ISO or IEEE, for example.

28

**HOWREY
SIMON
ARNOLD &
WHITE**

NON-PARTY PHILIPS ELECTRONICS NORTH AMERICA
CORPORATION'S NOTICE OF MOTION AND MOTION
FOR SANCTIONS FOR VIOLATION OF FED. R. CIV. P. 45(c)(1)
C01-1640 SBA (MEJ)

1    days placed an undue burden on non-party PENAC and forced non-party PENAC to expend time and

2    money seeking the present relief.  Even before serving the subpoena, Messrs. Lambert and Wesenberg

3    must have known that the subpoena was wildly overbroad.  Nevertheless, they persisted in their

4    demand that production begin a mere 25 days later, and their refusal to move the date for production

5    was a failure to take reasonable steps to avoid placing an undue burden on non-party PENAC.

6        C.    **Microsoft Imposed Undue Burdens By Refusing To Move**
              **PENAC's Deadline For Moving To Quash**

7

8           In addition to the above, Messrs. Lambert and Wesenberg placed an undue burden on non-party

9    PENAC by refusing to move the date for non-party PENAC to file a motion to quash Microsoft's

10   patently overbroad subpoena.  As detailed above, in response to point-blank questioning on this issue

11   on February 18th, Mr. Lambert would not agree to move the date, though he knew that the motion

12   would be due the next day, *i.e.*, the 19th.  (*See* Pistorino Decl., Ex. 8 at ¶ 14; Pistorino Decl., Ex. 10 at

13   ¶¶ 7-8 and Pistorino Decl. Ex. 12 at ¶ 4; (FED. R. CIV. P. 45(c)(3)(a) ("On timely motion, the court by

14   which the subpoena was issued shall quash …"); 9 *Moore's Federal Practice* § 45.04[3][a] (Supp.

15   2003) ("A motion to quash a subpoena is 'timely' if made at any time before the date specified in the

16   subpoena for compliance.").)  As a result three PENAC attorneys (Valentine, Pistorino, and Madriaga)

17   were forced to work throughout the night of February 18th so that the motion could be timely filed on

18   February 19th in the Southern District of New York before the date set for production (*i.e.*, February

19   20th).  (*See* Pistorino Decl., Ex. 10 at ¶¶ 7-9, Pistorino Decl. Ex. 12 at ¶ 5, and Pistorino Decl. Ex. 11 at

20   ¶¶ 3-4.

21          Incredibly, Messrs. Lambert and Wesenberg now claim that this deadline was "self-imposed" –

22    when they set the date for production in the subpoena and refused to move the date for a motion to

23   quash in response to point-blank questioning on this topic.  (See Pistorino Decl., Ex. 10 at ¶¶ 7-9.

24   Such a claim does not even merit a response.

25

26

27

28

1      D.     **Microsoft Imposed Undue Burden By Forcing PENAC To Litigate In The Southern District Of New York For No Articulable Reason**

2

3        Messrs. Lambert and Wesenberg compounded all of the misconduct identified above when they

4 refused to have this matter considered by this Court and forced non-party PENAC to hire local counsel

5 in the Southern District of New York, fully brief a full motion to quash (rather than utilize this Court's

6 expedited procedure), and appear for oral argument for the purpose of resisting the subpoena.  Given

7 the presence of Microsoft's counsel in this District, as well as non-party PENAC's counsel (Mr.

8 Valentine), and, of course, this Court's familiarity with the underlying litigation, such a step would

9 have been reasonable, and Messrs. Lambert and Wesenberg's refusal was unreasonable.  At the

10 hearing in the Southern District of New York, the following exchange occurred:

11          THE COURT:  I understand that this court has jurisdiction.  I am asking
12          you why it is not appropriate to refer this to the judge who is handling
          the case.

13                                 * * *

14          [MICROSOFT'S COUNSEL]:  Your Honor, I believe the answer to
15          your question is I am not aware of any reason why it wouldn't be
          appropriate to have it heard in the Northern District of California before
16          Judge Armstrong.

17

18 (Pistorino Decl., Ex. 5.)  Thus, not even Microsoft's counsel was able to articulate any reason why they

19 forced non-party PENAC to expend its time and money litigating Microsoft's overbroad subpoena in

20 the Southern District of New York.  (*Id.*)  As a result of Messrs. Lambert and Wesenberg's failure to

21 take such a reasonable step, non-party PENAC incurred significant expense in the form of its

22 attorney's fees.

23      E.     **Microsoft's Woeful Efforts To Defend The Subpoena**

24        Microsoft's effort to defend the subpoena consists of a series of increasingly incredible claims.

25 Though Microsoft does not dispute the extreme breadth of the information demanded by the Requests

26 (*i.e.*, at a minimum, the review of more than a century's worth of publications), Microsoft describes the

27 Requests as "tailored."

28

HOWREY
SIMON
ARNOLD &
WHITE

NON-PARTY PHILIPS ELECTRONICS NORTH AMERICA
CORPORATION'S NOTICE OF MOTION AND MOTION
FOR SANCTIONS FOR VIOLATION OF FED. R. CIV. P. 45(c)(1)
C01-1640 SBA (MEJ)

1    Microsoft's latest effort to defend the subpoena is the simultaneously false and irrelevant

2    charge that the subpoena served on PENAC was "narrowed" based on Microsoft's discussions with

3    Sony.  Forth-three (43) of the 47 Requests served on PENAC are identical to those served on Sony

4    (though the name "Sony" was replaced with "Philips" throughout) (See Pistorino Decl., Ex. 13.)  Thus,

5    Request Nos. 1, 2, 4-6, 8-23, 25-31, and 33-47 are identical – including, for example, Request No. 28

6    discussed above.  Indeed, because an expansive definition of "DRM" was included in the PENAC

7    subpoena and many of the Requests include that term, many of the Requests are substantially broader

8    than those served on Sony.  Of the four remaining requests, Request No. 7 was newly added to the

9    PENAC subpoena, two Requests in the Sony subpoena were combined into Request No. 32 to

10   PENAC, while Requests Nos. 3 and 24 were modified to include reference to InterTrust.[6]  Thus, rather

11   than being "narrowed" in any material way, the Requests served on PENAC were substantially broader

12   than those served on Sony.

13       Moreover, of course, whatever the imagined differences between the Sony subpoena and that

14   served on PENAC, Microsoft does not dispute the incredible breadth of the subpoena served on

15   PENAC.  That is, Microsoft does not dispute that the subpoena literally demanded the review of more

16   than a century's worth of documents, etc.

17       F.    **Non-Party PENAC'S Requested Relief**

18       Non-party PENAC respectfully requests that the subpoena be quashed in its entirety and that

19   non-party PENAC be awarded its reasonable attorney's fees incurred in responding to the subpoena.

20   As detailed above, on its face, the subpoena is vexatiously overbroad and Messrs. Lambert and

21   Wesenberg compounded the burden on non-party PENAC through their refusal to take reasonable

22   steps (*e.g.*, moving the date for production, etc.) and outrageous response to the tragedy facing the

23   Valentine family.

24

25

26   [6] The Sony subpoena contained 55 Requests, six of which demanded information related to the Sony
     PlayStation and Bookman products and were, therefore, inapplicable to PENAC (or even Royal
27   Philips).

28

NON-PARTY PHILIPS ELECTRONICS NORTH AMERICA
CORPORATION'S NOTICE OF MOTION AND MOTION
FOR SANCTIONS FOR VIOLATION OF FED. R. CIV. P. 45(c)(1)
C01-1640 SBA (MEJ)

1     As relief, non-party PENAC requests that the subpoena be quashed in its entirety and that non-

2  party PENAC be awarded its reasonable attorney's fees incurred in responding to the subpoena.  As a

3  result of the subpoena and Messrs. Lambert and Wesenberg's failure to take reasonable steps, non-

4  party PENAC has been forced to:  1) obtain local counsel in the Southern District of New York; 2) file

5  briefs in the Southern District resisting the subpoena; 3) attend a hearing in the Southern District; 4)

6  file its letter brief with this Court; and 5) file the present motion.  All of these expenses would have

7  been avoided had Messrs. Lambert and Wesenberg not served a facially overbroad subpoena, taken

8  reasonable steps to avoid placing an undue burden on non-party PENAC, and not attempted to profit

9  from the near death (and subsequent diagnosis with an incurable form of cancer) of Mrs. Valentine.

10  IV.    **CONCLUSION**

11     For the reasons set forth above, non-party PENAC respectfully requests that the subpoena be

12  quashed in its entirety and that non-party PENAC be awarded its reasonable attorney's fees incurred in

13  responding to the subpoena.

14     Dated:  March 26, 2004             Respectfully submitted,

15

16                                    By:   /s/ James C. Pistorino
                                        HOWREY SIMON ARNOLD & WHITE, LLP

17                                        James C. Pistorino
                                      James F. Valentine

18                                        301 Ravenswood Avenue
                                      Menlo Park, CA  94025-3434

19                                        Telephone:  (650) 463-8100
                                      Facsimile:  (650) 463-8400

20                                        Attorneys for Non-Party
                                      PHILIPS ELECTRONICS NORTH AMERICA

21                                      CORPORATION

22

23

24

25

26

27

28

HOWREY
SIMON
ARNOLD &
WHITE

NON-PARTY PHILIPS ELECTRONICS NORTH AMERICA
CORPORATION'S NOTICE OF MOTION AND MOTION
FOR SANCTIONS FOR VIOLATION OF FED. R. CIV. P. 45(c)(1)
C01-1640 SBA (MEJ)