HOWREY SIMON ARNOLD & WHITE, LLP
# MEMORANDUM

Menlo Park

| | | |
|---|---|---|
| **TO:** | File | FILE: 05604.0010.000000 |
| **FROM:** | Laurie Hockin | |
| **DATE:** | March 16, 2004 | |
| **RE:** | *InterTrust Technologies Corp. v. Microsoft Corp.*<br>Subpoena Served on Non-Party Philips Electronics North America Corporation | |

Below please find a transcription of the in-person meet-and-confer conference between counsel for Microsoft (Mark Lambert) and counsel for non-party Philips Electronics North America Corporation (PENAC) (James Pistorino) held on March 15, 2004 at Howrey's Menlo Park office:

**[Pistorino]**  Meet-and-confer on the Philips subpoena.

**[Lambert]**  Yes, we're in Northern District of California now, and I guess we can do two things – I mean, you guys – you guys have relief that you seek.  I presume that you still seek it.

**[Pistorino]**  Right.

**[Lambert]**  And we can go ahead and just meet and confer on that relief.  Or, we are prepared to – since there's now some new time – we're prepared, as we have been before, to talk about a reasonable scope of objections and a reasonable timeline for producing documents – if you want to do that.  I know there was some attempt to do that last time, but – and it didn't really get anywhere – but we are willing to honestly meet and confer in accordance with the Northern District Local Rules.

**[Pistorino]**  Right, and we've stated in the past, and I understand Orrick's position – particularly your position, Mr. Lambert.  On behalf of PENAC, we're not willing to negotiate as to whether or not there will be an attempt to take advantage of the situation that faced Mr. Valentine.  So, as I've stated in the past, if Orrick – Microsoft – is willing to accept the objections as timely, then I think we might be able to move on to dealing with the individual requests themselves and their overbreadth.

**[Lambert]**  O.K.

**[Pistorino]**  That would be our initial thing.  Our second issue, of course, would be, as a result of the conduct in this case, PENAC has incurred significant

HOWREY SIMON ARNOLD & WHITE, LLP
File
March 16, 2004
Page 2

expense, and as I've stated in the past, we will be looking to be reimbursed for that expense. So those are sort of the two main issues. We really don't see there's much point in negotiating the individual requests themselves and their extreme breadth without going beyond those two issues. Since I understand from your prior positions – or at least – I'm not sure who I talked to . . .

**[Lambert]**  It was me. We were on the phone.

**[Pistorino]**  Were you on the phone the other time? Your position last time that we talked was that you were willing to negotiate whether or not you would take advantage of the situation facing the Valentines relative to the objections. And we're not willing to really go down that path. So, if you guys have anything different for me today, that's fine. Otherwise . . .

**[Lambert]**  O.K. We don't, because we didn't take care of – we didn't take advantage of anything. We weren't notified of anything to take advantage of until after it was done, and we didn't believe that it was – for the reasons that we briefed in our opposition to your motion, we didn't believe that there was an occasion to waive our client's rights under the rules. And so that's where we stand. And, as far as – we just don't see it. In terms of the interaction between Mr. Valentine and me or our firms, we just – we're in England and France on that issue. But, and to be honest, I'm not sure that your motion had – is going to have the effect that you hope that it has. And I don't think that anything happened in New York that causes us to believe that it's going to. I just don't think that there's sanctionable conduct. We believe that, and we acted in what we believe is good faith and in accordance with the rules.

**[Pistorino]**  So, you both . . .

**[Lambert]**  So that's the way we see it.

**[Pistorino]**  Right.

**[Lambert]**  And I understand that there is disagreement about that. I didn't come over here today to rehash what we briefed, and I figure if there's a dispute, then we'll dispute that. I honestly – I understand exactly how you guys feel about it. I understand it's very emotional and it's become that way, and it's become – at some level, it feels as though it's become personalized. We don't think it has been. We've never tried to exploit anything, but we can't – our position was that we could – I talked to Mr. Valentine about filing objections. I said our concern is we don't want this to turn into a situation where we get broad-scale, blunderbuss objections to a subpoena where another company similarly situated has produced 15,000 pages of documents, and where it's never been litigated. And, in fact, this subpoena had been narrowed from the discussions with that other party. And it's

8011464

HOWREY SIMON ARNOLD & WHITE, LLP
File
March 16, 2004
Page 3

not a situation where Philips North America can really take the position that it had no role in this. It did have a role. At least four vice presidents were involved in it. And it's clear – it's a reasonably calculated subpoena based on probable cause, and it was based upon a lot of knowledge that Philips America entities had involvement in this. So, we just don't see the subpoena that way.

And when I talked to Jim on the phone during that week, I told him – I said look, we're willing to talk about objections, but we can't have the kinds of objections that wound up coming the next day. It's 36 pages of objections where there's a willingness to produce on I think around 10 of the categories. And, so, we just – we weren't – with all due respect to Mr. Valentine and his situation, and especially in light of what we saw in terms of what happened during that 14 days, we just didn't think – we're just not in a position to put Microsoft in the position of having to move to compel on anything that's beyond the scope that Philips North America has decided to choose. It sounds to me today like there's no hope to move beyond this sort of loggerhead's position.

**[Pistorino]**  Right.

**[Lambert]**  But we did come – I will say this since the tape recorder's on. We came here prepared to withdraw 10 requests and to narrow four of them, and to also talk about some of the general objections that you guys put in here to try to find some accommodation to deal with this. But, we just don't believe that – we just think that that's the appropriate discussion, if any, to have. If you guys aren't interested in that, we'll go away and we'll write our letter to the judge.

**[Pistorino]**  And, as you just told me again here today, you believe that Microsoft has obtained an advantage from the situation facing the Valentine family, and that you don't feel comfortable negotiating that advantage away, or you want to obtain something in exchange for that. And, as we've stated in the past, that is not proper conduct. That's with respect to the objections themselves.

With respect to the burden of the subpoena itself, as you know, we have had an issue of the demand for production on February 20th and the continuing nature of that. Obviously, one of the – certainly one of the things you've seen in our papers before and one thing you'll see again, is that the rules regarding subpoenas require you to take reasonable steps to avoid an undue burden. One of those reasonable steps is that you have at least a reasonable amount of time for compliance with the subpoena, even as stated on its face. On the face of these requests, it's just ludicrous to expect anybody – I mean, on the face of the subpoena, it asks for actually Royal Philips, not Philips North America specifically, but Royal Philips to review more than a century's worth of publications on a broad range of topics. I know you've seen some of our papers – they have more than 100,000 patents – and yet, even with the breadth of the subpoena itself regardless of what time it

HOWREY SIMON ARNOLD & WHITE, LLP
File
March 16, 2004
Page 4

was even sent, that would be an undue burden and would be improper. Trying to demand compliance with that subpoena within the 24 days provided by the subpoena was itself sanctionable conduct. Refusing to move the date for production was sanctionable conduct. Refusing to move the date when Philips North America needed to file a motion to quash was sanctionable conduct. All of these things were brought to your attention – refusing to have the matter considered by the court here in the Northern District – that was sanctionable conduct. When you serve a subpoena on a third party, you need to take reasonable steps.

And one thing that happened in New York, right away the judge directed us back here. Your attorney in New York was not even able to articulate one reason – one fact why that matter needed to be dealt with in New York. He sure showed up and said "we don't know why we're here," and the judge, over Microsoft's objections, ordered that this matter be handled here in the Northern District.

So, I understand that you want to negotiate the tragedy facing the Valentine family relative to your objections, and I'm sure you understand that we're not willing to do that. We don't think that any court hearing that will think that that's a reasonable response. We don't think any court hearing the course of conduct in this case will think that's a reasonable response. So, once again, I'll drop back – unless you're willing to consider the objections as timely and compensate Philips North America for the attorneys' fees that it's incurred in responding to this matter, then I don't know that we have a whole lot more to discuss. A court can look at – let me finish – a court can look at your requests and decide whether or not they were reasonably calculated.

As you know, Philips North America does not believe that a request demanding that Royal Philips worldwide take its 160,000 employees and demand that they review more than a century's worth of publications. We just don't think that's reasonable, and I don't think any court anywhere would ever find that to be reasonable. We don't think that requests demanding information about at least 14 patents that are not at issue in your case – we don't think those are reasonably calculated. Just on and on for every single request, you've got some serious problems. If, when you had heard of the situation facing the Valentine family, there had been a good faith effort to try to respond to that – yes, you accept the objections as timely when the opposing counsel tells you their parent is dying – seems pretty reasonable. When you take that . . .

**[Lambert]**  I don't think this is productive to go back over your . . .

**[Pistorino]**  Let me finish. Let me finish and then you guys can make your statements. If you take those steps, then I think – then the attorneys' fees would have been avoided and Philips North America certainly would have responded to

HOWREY SIMON ARNOLD & WHITE, LLP
File
March 16, 2004
Page 5

> the requests and made an effort to negotiate with you. Although, I have to say, many of them I don't think there would have been any hope at all of rehabilitating the requests themselves. So, I think we're back at our point. We've already drafted our letter.
>
> I did not – based on the papers that we've seen from you guys before – I did not anticipate that you would come here willing to state that you're going to treat the objections as timely, and not try to take advantage of the situation facing the Valentine family, or compensate Philips North America for the attorneys' fees it's expended in responding to this subpoena when you didn't take reasonable steps. So, I think that's where we are. If you guys got anything further, that's fine.
>
> **[Lambert]** You're the one who pushed play or record on the tape recorder, so if we're making our oral arguments here, then – which is basically what I just heard – I'd like to respond to the items that you just mentioned because it does appear that we've reached a disagreement, but I think you've mischaracterized what – at least what I've said here today.
>
> First of all, with respect to what happened in New York, the judge did ask "wasn't somebody else involved in this at all during those 14 days?" – never taking the position that Mr. Valentine's circumstances is the basis for a windfall for Microsoft. Always in our conversations and in our papers is an analysis of the full 14 days. And, to be honest, you guys are a big, national law firm. It's in the papers. Nobody – now there are – now everybody but Mr. Valentine is involved in this thing. And it just doesn't make sense. We know the way things happen around our office. We know what happens – you guys have to carry malpractice insurance, you guys log these subpoenas on the calendars, and you get people involved. And, there's just no excuse for a big law firm to lapse for 14 days. What happened to Mr. Valentine is totally beside the point, and you can't – as we said in our papers, he was attending to other things on the day of the deadline. He said he remembered it and he just didn't call. He didn't assign one of you guys to call. All of these things are things that have nothing to do with Microsoft. Microsoft did nothing. We were sitting in the dark, having no idea what was going on, O.K.?
>
> So, we brought the subpoena to New York because Philips North America is headquartered in New York. We had probable cause based upon what I think is Exhibit F to my declaration – the Fidelio contact list which placed all of the knowing people in New York. We don't know why Philips North America chose West Coast counsel on a subpoena that was issued in New York. All of the categories that we've put in here were reasonably calculated. They were responded to by Sony Corporation of America, and the ones that you guys received were tailored down from that. Nobody ever took the position that you – that Philips North America was required to poll individually each of its hundred-

HOWREY SIMON ARNOLD & WHITE, LLP
File
March 16, 2004
Page 6

odd thousand people. You can start with four vice-presidents and conduct a reasonable search outward. We briefed that, O.K.?

We came here today thinking that there might be – thinking that there might be some way to move forward. The first thing that I said to Jim Valentine when he called me was "of course you can have your 10 days – you can have more – you can produce on a rolling basis." And I never withdrew that. I don't understand where the withdraw – where I was construed to have withdrawn that offer. It still stands today, although the 10 days we originally offered I guess would have expired, but we still said we'll take it on a rolling basis, which is exactly what we've done for Sony Corporation of America. What I said I wouldn't do is I said that Microsoft would not accept blunderbuss objections that would place the burden on Microsoft to move to compel anything that Philips North America unilaterally decided not to produce. And when we got these objections, it was clear to me that there was – that Philips North America voted with its feet. It was a decision not to produce virtually anything in response. So, that's where we stand. Rule 45 says what it says. We've served a subpoena in New York on a New York company, and we asked you to produce documents probably about a mile and a half away from where they were, and we would have come and picked them up. That's one of the things that could have been negotiated during the two weeks when Philips North America did nothing.

So, we are very sorry for Mr. Valentine, but it's not – to be honest, it's a law firm issue and it has to do with – and a party's issue – the party didn't do anything with the subpoena once it got it, and Mr. Valentine didn't get anybody involved. And we had no opportunity to accommodate Mr. Valentine's situation before the rules took affect. So that's the way we see it. Apparently, we'll expect your 2½ pages of letter, and the way we've typically done that – the way we've typically handled those is we do it by e-mail. It's your motion. If you guys want to preface it, go ahead. We have some boilerplate that keeps the introduction short where you get into it and you send us ours, we respond, and you guys get a chance to respond. You can change your argument if you want, and then we just get our opportunity to do the same thing.

**[Pistorino]** Right, I'll send something over later on today. In terms of the facts, obviously the facts are disputed as to what you've . . .

**[Lambert]** Yeah, we disagree.

**[Pistorino]** . . . what you've stated. I mean . .

**[Lambert]** O.K.

8011464

Howrey Simon Arnold & White, LLP
File
March 16, 2004
Page 7

**[Pistorino]**  Your version of them doesn't really strike me as jiving that much with reality, but that's your . . .

**[Unidentified Orrick Attorney]**  But you weren't involved at that point though were you?

**[Pistorino]**  But that's your version of them – I understand.

**[Lambert]**  Can we get a copy of that transcript?

**[Pistorino]**  Sure.

**[Lambert]**  Great.

**[END OF TAPE]**

8011464